UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: CELSIUS NETWORK LLC, *et al.*, <br><br> Reorganized Debtors. | Chapter 11 <br><br> Case No. 22-10964 (MG) <br><br> (Jointly Administered) |
| MOHSIN Y. MEGHJI, Litigation Administrator, as Representative for the Post-Effective Date Debtors, <br><br> Plaintiff, <br><br> -against- <br><br> COMPOUND LABS, INC., COMPOUND DAO, ROBERT LESHNER, and GEOFFREY HAYES, <br><br> Defendants. | Adversary Proceeding <br><br> Adv. Proc. No. 24-03989 (MG) <br><br> Civil No. 1:25-cv-00926 (JLR) <br><br> **OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

This Adversary Proceeding was commenced in the Southern District of New York Bankruptcy Court by Plaintiff Mohsin Y. Meghji, the Litigation Administrator for Celsius Network LLC and its affiliated Debtors (collectively, "Celsius" or the "Debtors"), against Defendants Compound Labs, Inc. ("Compound Labs"), Compound Dao, Robert Leshner ("Leshner"), and Geoffrey Hayes ("Hayes," and, together with Leshner, "Individual Defendants"). *See Meghji v. Compound Labs, Inc.*, No. 24-03989 (MG) (Bankr. S.D.N.Y. filed July 12, 2024) (the "Adversary Proceeding"). The Adversary Proceeding is part of a larger bankruptcy case, *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. filed July 13, 2022), pending in the Southern District of New York Bankruptcy Court before Judge Martin Glenn. In this Adversary Proceeding, Celsius asserts federal securities law and various common-law claims in connection with trading losses it suffered while loaning and borrowing cryptocurrency assets on a software protocol system developed by Compound Labs. *See generally* Dkt. 4-1 ("First Amended Complaint" or "FAC").

1

Now before the Court is Defendants' Motion to Withdraw the Bankruptcy Reference pursuant to 28 U.S.C. § 157(d).  Dkt. 1 ("Mot.").

## BACKGROUND

### I.    Factual History

Celsius is "one of the largest cryptocurrency-based finance platforms and Bitcoin mining companies in the world," and provides "financial services to institutional, corporate and retail clients across more than 100 countries."  FAC ¶ 19.  Leshner and Hayes cofounded Compound Labs in 2017 with the objective of "establishing properly functioning money markets for blockchain assets."  FAC ¶ 25.  The company developed the Compound Protocol (the "Protocol"), a publicly available software protocol system designed to allow users to borrow cryptocurrency assets by using their own cryptocurrency assets as collateral.  FAC ¶¶ 20-21, 25-27; Dkt. 4-2 ("MTD") at 1.  Through the Protocol, users can "lock" their cryptocurrency "assets into a community pool from which other users can borrow after posting collateral."  FAC ¶ 29.  "When users deposit their money into a liquidating pool, they are issued 'cTokens,'" which denote their investment ownership rights and track their earned interest.  FAC ¶ 30.  Moreover, "[t]o further induce borrowing on the platform, users receive COMP tokens for borrowing on the platform."  FAC ¶ 31.  The platform requires users to "maintain a certain ratio of collateral" to partake in lending and borrowing on the platform.  FAC ¶ 2.  The value of a user's posted collateral must exceed the value of their borrowed assets, such that the user is not "undercollateralized."  *See* FAC ¶ 37; MTD at 1.  Failure to maintain the requisite ratio could result in automatic liquidation of the user's borrowing position.  FAC ¶¶ 2, 37.  As of November 2020, Celsius had entered into borrowing positions on the Protocol for two cryptocurrency stablecoins, or cryptocurrency "pegged to fiat currencies like the U.S. dollar": DAI and USDT.  FAC ¶¶ 21, 55.

Celsius's claims in the Adversary Proceedings arise from an alleged misrepresentation by Defendants in a 2019 Whitepaper discussing the Protocol: according to Celsius, the Whitepaper "falsely represented to potential investors, borrowers, and users of the [Protocol] that the price of assets traded on the [Protocol] would be tied to ten sources of pricing information." FAC ¶ 3. Celsius contends that "at the time of the conduct underlying this action, the price of assets on the [Protocol] was actually linked to one, and only one," source for pricing data: Coinbase Pro. FAC ¶ 5; *see also* FAC at ¶¶ 39-40. In November 2020, due to a reported price increase in the value of Celsius's borrowed assets on the Protocol, Celsius's position was deemed undercollateralized, and Celsius's tokens were therefore liquidated. FAC ¶ 6. Specifically, Plaintiff alleges that the Coinbase Pro exchange "mistakenly and falsely" indicated a price increase in the DAI cryptocurrency, "caus[ing] the wrongful liquidation of valuable collateral associated with loan positions on [the Protocol]," including Celsius's collateral. FAC ¶ 57. Celsius brings this Adversary Proceeding to recover damages it allegedly sustained as a result of the liquidation of its position on the Protocol.

## II. Procedural History

On July 13, 2022, the Debtors filed a voluntary Chapter 11 Petition with the Southern District of New York Bankruptcy Court. Chapter 11 Voluntary Petition for Non-Individual, *In re Celsius Network LLC*, No. 22-10964 (Bankr. S.D.N.Y. July 13, 2022), ECF No. 1. On November 9, 2023, the parties finalized a confirmed plan of reorganization. Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC & Its Debtor Affiliates, *In re Celsius Network LLC*, No. 22-10964 (Bankr. S.D.N.Y. Nov. 9, 2023), ECF No. 3972-1.

Plaintiff initially commenced this Adversary Proceeding on July 12, 2023 in the Southern District of New York Bankruptcy Court before Judge Martin Glenn, asserting

negligence, negligent misrepresentation, and professional malpractice claims against Compound Labs. *See generally* Complaint, *Meghji*, No. 24-03989 (Bankr. S.D.N.Y. July 12, 2024), ECF No. 1. On November 1, 2024, in response to Defendants' motion to dismiss, Plaintiff filed an Amended Complaint, adding Compound Dao, Leshner, and Hayes as Defendants. *See generally* FAC. The FAC also added a securities fraud claim under SEC Rule 10b-5 and a breach of fiduciary duty claim. *Id.* at 19-20.

On December 20, 2024, Defendants filed a motion to dismiss Plaintiff's FAC. Motion to Dismiss, *Meghji*, No. 24-03989 (Bankr. S.D.N.Y. Dec. 20, 2024), ECF. No. 32. Plaintiff filed its opposition on January 31, 2025, Response to Motion, *Meghji*, No. 24-03989 (Bankr. S.D.N.Y. Jan. 31, 2025), ECF No. 42, and Defendants filed their reply on February 21, 2025, Reply to Motion, *Meghji*, No. 24-03989 (Bankr. S.D.N.Y. Feb. 21, 2025), ECF No. 44. The parties' motion to dismiss briefing is currently pending before the Bankruptcy Court.

On January 31, 2025, Defendants filed the motion presently before this Court to withdraw the bankruptcy reference. Mot. On February 10, 2025, Plaintiff filed its opposition, Dkt. 6 ("Opp."), and on February 24, 2025, Defendants filed their reply, Dkt. 11 ("Reply").

## LEGAL STANDARDS

Federal district courts have original jurisdiction over all civil proceedings "arising under," "arising in," or "related to" cases under Title 11, the United States Bankruptcy Code. 28 U.S.C. § 1334(b). In the Southern District of New York, these cases are automatically referred to the Bankruptcy Court. *See In re Standing Order of Reference Re: Title 11*, No. 12-mc-00032 (S.D.N.Y. Feb. 1, 2012). This automatic reference is, however, subject to withdrawal by the federal district courts pursuant to 28 U.S.C. § 157(d). Specifically, 28 U.S.C. § 157(d) provides that the district court "may withdraw, in whole or in part, any case or proceeding referred under this section . . . for cause shown." 28 U.S.C. § 157(d).

Moreover, a district court "shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.* "The first sentence in Section 157(d) provides for 'permissive' withdrawal, or withdrawal for cause, while the second sentence provides for 'mandatory' withdrawal." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 307, 311 (S.D.N.Y. 2011).

## DISCUSSION

Defendants argue that withdrawal of the bankruptcy reference is necessary because Celsius brings a "federal securities claim under Section 10(b)(5) of the Securities Exchange Act of 1934 and Rule 10b-5 that involves a significant interpretation — not simple or routine application — of federal securities law." Mot. at 7.  Defendants separately assert that cause also exists for permissive withdrawal of Celsius's remaining common-law claims for negligence, professional malpractice, breach of fiduciary duty, and negligent misrepresentation. Mot. at 9-13; *see also* Reply at 1.  The Court addresses these grounds for withdrawal in turn.

## I.    Mandatory Withdrawal Under Section 157(d)

"The mandatory withdrawal provision of Section 157(d) has been construed 'narrowly' to apply only in cases 'where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding.'" *Sec. Inv. Prot. Corp.*, 454 B.R. at 312 (quoting *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990)).  "'Substantial and material consideration' means 'significant interpretation, as opposed to simply application, of federal laws apart from the bankruptcy statutes.'" *In re MF Glob., Inc.*, No. 12-cv-06014 (KBF), 2012 WL 4757866, at *3 (S.D.N.Y. Oct. 4, 2012) (quoting *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)).  "Where

matters of first impression are concerned, the burden of establishing a right to mandatory

withdrawal is more easily met." *Chemtura Corp. v. United States*, No. 10-cv-00503 (RMB),

2010 WL 1379752, at *1 (S.D.N.Y. Mar. 26, 2010) (alteration adopted) (quoting *In re*

*Manhattan Inv. Fund Ltd*., 343 B.R. 63, 67 (S.D.N.Y. 2006)).  "Resolution of a motion to

withdraw the reference does not, however, require an analysis of 'the merits of the parties'

positions concerning the statutes of the property in despite.'"  *In re MF Glob.*, 2012 WL

4757866, at *3 (alteration adopted) (quoting *Bear, Stearns Sec. Corp. v. Gredd*, No. 01-cv-

04379 (NRB), 2001 WL 840187, at *4 (S.D.N.Y. July 25, 2021)).

        To resolve Plaintiff's federal securities claim, a court will first need to resolve the

threshold question of whether the digital tokens distributed through the Protocol constitute

"securities" within the meaning of the Securities Act — a matter that plainly falls outside the

scope of the Bankruptcy Code.  "[T]he Securities Act sets out an expansive definition of the

term 'security' that includes, as relevant here, the undefined term 'investment contract.'"  *SEC*

*v. Coinbase, Inc*., 726 F. Supp. 3d 260, 286 (S.D.N.Y. 2024) (quoting 15 U.S.C. § 77b(a)(1)).

In *SEC v. W.J. Howey Co*., the Supreme Court defined an investment contract for purposes of

the Securities Act as a "contract, transaction or scheme whereby a person invests his money in

a common enterprise and is led to expect profits solely from the efforts of the promoter or a

third party."  328 U.S. 293, 298-99 (1946).  "The test is whether the scheme involves an

investment of money in a common enterprise with profits to come solely from the efforts of

others."  *Id.* at 301.  District courts have construed *Howey* as setting forth a three-pronged test

for whether an instrument constitutes an investment contract: a plaintiff must show "(i) an

investment of money (ii) in a common enterprise (iii) with profits to be derived solely from

the efforts of others."  *Revak v. SEC Realty Corp*., 18 F.3d 81, 87 (2d Cir. 1994); *accord*

*Coinbase,* 726 F. Supp. 3d at 279.

Several courts in this District have applied *Howey* to cryptocurrencies, but those decisions are of recent vintage and were issued without the benefit of any guidance from the Second Circuit.  *See SEC v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169, 177 (S.D.N.Y. 2020) ("Few courts in this Circuit have had the opportunity to apply *Howey* in the context of cryptocurrency.").[1]  The Second Circuit has yet to clarify when transactions in cryptocurrencies constitute "investment contracts" within the meaning of the Securities Act. Moreover, this case raises new questions not yet addressed by the handful of cases in this District that have interpreted securities laws in the context of cryptocurrencies.  Plaintiff's claim features an asset, cTokens (specifically, cETH), that was supplied to users in exchange for collateral supplied to borrow other assets from the Protocol, and another type of asset, COMP, that was distributed "when the Protocol was already developed and fully functional," "at or after the time [Compound] Labs publicly announced that it turned over control of the Protocol to the community," and "when there was an existing use for COMP as a governance token."  Reply at 3-4.  Because the Protocol was fully developed, this case arguably differs from those that have involved a pooling of assets to develop or facilitate the launch of an underlying blockchain ledger or digital ecosystem.  And because the Protocol had already been turned over to the public, there is a question as to whether purchasers could have held a reasonable expectation of profits to be "derived solely" from the managerial or directorial efforts of others.  *Cf. Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 355-56 (S.D.N.Y. 2019) (finding profits derived solely from the effort of others where "the success of ATB Coins was entirely dependent on Defendants' following through on their promise to launch

---

[1] It also warrants mentioning that all the authorities Plaintiff relies upon, *see* Opp. at 5-6, were decided by Article III courts — a fact that, while "not dispositive," is "an indication that the issues addressed in these motions are of a type which Article III courts have frequently been called upon to address."  *Mishkin v. Ageloff*, 220 B.R. 784, 799 (S.D.N.Y. 1998).

and improve the ATB Blockchain," leaving purchasers with "no control over whether the new ATB Blockchain technology worked"); *Kik Interactive*, 492 F. Supp. 3d at 180 (finding investment contract where growth of investment in Kin cryptocurrency "rel[ied] heavily on Kik's entrepreneurial and managerial efforts," which were "crucial because without the promised digital ecosystem, Kin would be worthless"); *United States v. Zaslavskiy*, No. 17-cr-00647 (RJD), 2018 WL 4346339, at *7 (E.D.N.Y. Sept. 11, 2018) ("[T]here is no indication that investors were to have any control over the management of [defendant's cryptocurrency business]" or that "investors would have been capable of participating in or directing their investments.").

Therefore, at the very least, this case will require applying *Howey* to a novel set of circumstances. A reviewing court will need to determine, for instance, whether (1) the receipt of COMP or cTokens is sufficient to confer statutory standing; (2) whether the receipt of COMP or cTokens constitutes an "investment of money"; (3) whether a reasonable purchaser of COMP would have been motivated by returns on an investment; and (4) whether a holder of COMP or cTokens would have had a reasonable expectation of profits based on the efforts of others, rather than based on market forces or their own lending and borrowing activity. *See* Mot. at 8-9; *see also Ageloff*, 220 B.R. at 798-99 (withdrawing bankruptcy reference where securities fraud claims were "complex" and implicated "developing law with respect to pleading issues under the [Private Securities Litigation Reform Act]"); *Sec. Inv. Prot. Corp.*, 454 B.R. at 312-16 (granting mandatory withdrawal where claims raised preemption and standing questions under federal securities law); *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 288 n.1 (2d Cir. 1992) ("Because the Securities Claims necessitated an examination of federal securities laws, Judge Pollack properly withdrew those claims from the bankruptcy court."). This is not simply a matter of applying well-established federal law to the specific

facts of a case: the body of law applying the Securities Act to decentralized digital assets is still relatively nascent and evolving. *Cf. In re Adelphi Inst.*, *Inc.*, 112 B.R. 534, 538 (S.D.N.Y. 1990) (denying withdrawal based on federal RICO claim where case involved "nothing other than a relatively routine application of a federal law to a set of case-specific facts").

In any event, while the presence of a novel issue weighs in favor of withdrawal, "the issues of non-bankruptcy law raised by the proceeding need not be unsettled or involve matters of 'first impression,'" if they nonetheless require more than a "'simple application' of federal non-bankruptcy law." *In re Enron Corp.*, No. 04-cv-08177 (RCC), 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (first quoting *In re McCrory Corp.*, 160 B.R. 502, 505 (S.D.N.Y. 1993); and then quoting *Exxon Corp.*, 932 F.2d at 1026). To the extent Plaintiff cites authorities holding otherwise, the Court respectfully declines to adopt such a restrictive interpretation of Section 157(d)'s mandatory withdrawal provision. *See, e.g.*, Opp. at 4-5 ("The mere fact that the bankruptcy judge is forced to determine issues outside the scope of bankruptcy laws is insufficient to mandate withdrawal until and unless the movant can demonstrate that such issues are one of first impression or that there is a conflict between the Code and non-Code cases." (alteration adopted) (quoting *In re C-TC 9th Ave. P'Ship*, 177 B.R. 760, 765 (N.D.N.Y. Feb. 13, 1995))). Because this case necessitates "significant interpretation" of *Howey* and its progeny, *Ageloff*, 220 B.R. at 796, and involves more than the "routine application of federal laws outside the Bankruptcy Code," *In re Enron Corp.*, 2004 WL 2711101, at *2 (citation and brackets omitted), removal to federal district court is appropriate.

For the foregoing reasons, chief of which is that the application of federal securities laws to virtual and digital assets is a still-developing field of law, the Court finds that the

bankruptcy reference for Plaintiff's federal securities claim should be withdrawn under Section 157(d).[2]

## II.    Permissive Withdrawal Under Section 157(d)

Turning to Plaintiff's claims for negligence, negligent misrepresentation, professional malpractice, and breach of fiduciary duty, the Court finds that withdrawal of those claims is warranted under the permissive language of 28 U.S.C. § 157(d).

As set forth by the Second Circuit in *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993), and as modified by *Stern v. Marshall*, 564 U.S. 462 (2011), determining whether permissive withdrawal is appropriate requires balancing a series of factors. "First, a district court engages in a threshold inquiry to determine the bankruptcy court's authority to enter final judgment in the matter." *In re Empire Stat Grp., LLC*, No. 24-cv-04101 (ER), 2024 WL 3666381, at *2 (S.D.N.Y. Aug. 5, 2024). Under *Orion*, the "threshold" inquiry in evaluating a request for permissive withdrawal was whether the claim was core or non-core. *Orion*, 4 F.3d at 1101. The Second Circuit's reasoning in *Orion* was premised on the fact that, as of the time of the Court's decision, bankruptcy courts had statutory authority to enter final judgments in "core" claims. *Id.* at 1100-1101; *see also* 28 U.S.C. § 157. *Stern v. Marshall*, however, altered the analysis: the Supreme Court in *Stern* held that even when there is statutory authority to decide a core claim, a non-Article III bankruptcy court may nevertheless lack constitutional authority to render a final judgment. *Stern*, 564 U.S. at 488-95. *Stern* held that bankruptcy courts have constitutional authority to render final judgments in just three instances: when "(1) the defendant filed a proof of claim in the bankruptcy proceeding; (2) the right being adjudicated is public rather than private; or (3) the parties consented to have the

---

[2] Nothing herein should be interpreted as expressing an opinion on the underlying merits of Plaintiff's pending motion to dismiss.

bankruptcy court enter final judgment." *Lehman Bros. Holdings Inc. v. Wellmonth Health Sys.*, No. 14-cv-01083 (LGS), 2014 WL 3583089, at *3 (S.D.N.Y. July 18, 2014) (discussing *Stern*, 564 U.S. at 478, 488-95).

"[F]ollowing the Supreme Court's decision in *Stern v. Marshall*, the majority of courts in this Circuit have determined that the primary *Orion* factor — whether or not a proceeding is core or non-core — has been supplanted by a determination 'of whether the bankruptcy court may finally determine a proceeding or whether the bankruptcy court's proposals must be reviewed de novo by a district court [that] is governed by Article III.'" *Sec. Inv. Prot. Corp.*, 486 B.R. at 582 n.1 (citation omitted) (quoting *Dynegy Danksammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 530 (S.D.N.Y. Nov. 7, 2012)); *see also In re Lehman Bros. Holdings Inc.*, 480 B.R. 179, 188 (S.D.N.Y. 2012) ("[I]n evaluating a motion to withdraw post-*Stern*, the principal question is no longer whether the claim in question is 'core' or 'non-core' pursuant to the Bankruptcy Code but whether the bankruptcy court has constitutional authority to enter final judgment on the claims at issue."). Nonetheless, at least some courts in this district have found that "the core/non-core distinction is still a relevant consideration." *In re Madison Bentley Assocs.*, *LLC*, 474 B.R. 430, 434 (S.D.N.Y. 2012) (quoting *In re Extended Stay*, *Inc.*, 466 B.R. 188, 204 (S.D.N.Y. 2011)).[3]

"Second, using this information, a district court evaluates whether considerations of judicial efficiency, uniformity of bankruptcy administration, the parties' jury trial rights, and the prevention of forum shopping favor withdrawal." *Empire Stat Grp.*, 2024 WL 3666381, at *2 (quoting *Orion*, 4 F.3d at 1101).

---

[3] This Court need not decide the continuing relevance of the core/non-core distinction because the proceedings here are, in any event, non-core proceedings.

Defendants argue that there is also cause for permissive withdrawal, because: (1) the Bankruptcy Court lacks final adjudicative authority over the Adversary Proceeding; (2) the Adversary Proceeding is a non-core proceeding; and (3) the remaining *Orion* factors favor withdrawal.  Mot. at 9-13.  For the reasons set forth below, this Court agrees.

### A.  The Bankruptcy Court Lacks Final Adjudicative Authority

The Court first turns to an analysis of *Stern's* three enumerated exceptions for a bankruptcy court's exercise of final adjudicative authority: that is, if the right being adjudicated is public; if the defendant filed a proof of claim; or if the parties consented to having the bankruptcy court enter final judgment.  None of *Stern's* exceptions apply here.

With respect to *Stern's* first exception, the claims involved in the Adversary Proceeding — a securities fraud claim and common-law tort claims — do not implicate public rights.  *See, e.g.*, *SEC v. Jarkesy*, 144 S. Ct. 2117, 2136 (2024) (finding that actions under the "antifraud provisions of the federal securities laws" providing for civil penalties implicated a "matter of private rather than public right" (bracket omitted) (quoting *Granfinanceria, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989))); *In re Jacoby & Meyers-Bankr. LLP*, No. 15-cv-07144 (RA), 2017 WL 4838388, at *4 (S.D.N.Y. Oct. 25, 2017) (noting that common-law claims for negligence and breach of fiduciary duty claims involve private rights).  Plaintiff does not dispute this.

It is also undisputed that Defendants have not filed a proof of claim in the bankruptcy proceeding.  *See In re Connie's Trading Corp.*, No. 14-cv-00376 (LAK) (GWG), 2014 WL 1813751, at *8 (S.D.N.Y. May 8, 2014) ("The second *Stern* exception appears to be inapplicable here as well, as it appears neither [defendant] ha[s] filed proof[] of claim against [debtor's] estate"); *Pryor v. Tromba*, No. 13-cv-00676 (JFB), 2014 WL 1355623, at *5 (E.D.N.Y. Apr. 7, 2014) ("[The second *Stern*] exception is not applicable here as defendant

has not filed a proof of claim against the estate to be resolved in connection with this adversary proceeding.").

As for the last *Stern* factor, Defendants have not consented to having the bankruptcy court enter final judgment.

Since none of the *Stern* exceptions apply, the Bankruptcy Court lacks final adjudicatory authority over the claims asserted in the Adversary Proceeding. But that does not conclude this Court's inquiry. "A determination that the bankruptcy court lacks authority to enter final judgment does not mandate withdrawal of the bankruptcy reference." *Sec. Inv. Prot. Corp.*, 2023 WL 6122905, at *6. The Court therefore turns to the remaining factors.

### B. The Proceeding is a Non-Core Adversary Proceeding

"A claim is not core simply because it involves the estate's assets." *In re Empire Stat. Grp.*, 2024 WL 3666381, at *4 (citing *Orion*, 4 F.3d at 1102). "Rather, a claim is core when it is 'directly related to a bankruptcy court's central functions.'" *Id.* (quoting *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005)). "A core claim 'invokes a substantive right under the Bankruptcy Code or that could arise only in the context of a bankruptcy case,' whereas a non-core claim 'is related to a case under title 11 and might have a conceivable effect on the estate.'" *Roman Cath. Diocese of Rockville Centre v. Arrowood Indemnity Co.*, No. 20-cv-11011 (VEC), 2021 WL 1978560, at *5 (S.D.N.Y. May 17, 2021) (quoting *Lehman Bros. Holdings Inc.*, 2014 WL 3583089, at *2). Celsius's claims, which arise from pre-petition conduct and "in no way turn on bankruptcy law or depend on federal bankruptcy jurisdiction," Mot. at 11, are non-core. *See, e.g.*, *In re FMI Forwarding Co.*, No. 01-cv-09462 (DAB), 2004 WL 1348956, at *4 (S.D.N.Y. June 16, 2004) ("[C]ourts in this Circuit have consistently found professional malpractice claims arising out of pre-petition misconduct to be non-core." (collecting cases)); *In re Arbco Cap. Mgmt., LLP*, 479 B.R. 254,

266 (S.D.N.Y. 2012) (common-law claims for negligence and breach of fiduciary duty "involve non-core proceedings and are indisputably private rights").

Celsius's contention — made in passing, and without any elaboration — that Plaintiff has asserted "core claims affecting the administration and liquidation of the Debtors' estates" misses the mark. *See* Opp. at 7. The Second Circuit in *Orion* rejected Celsius's argument that an adversary proceeding becomes a "core" proceeding merely because it might "affect the administration and liquidation of the estate." *Orion*, 4 F.3d at 1102. *Orion* observed that, under this reasoning, "[a]ny contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus 'concern[s]' its 'administration.'" *Id* (quoting 28 U.S.C. § 157(b)(2)(A)). That Celsius's claims "might have a conceivable effect on the estate," *Diocese of Rockville Centre*, 2021 WL 1978560, at *5 (quoting *Lehman Bros. Holdings Inc.*, 2014 WL 3583089, at *2), does not transform the Adversary Proceeding — which otherwise involves state common-law and federal securities claims arising from pre-petition conduct and unrelated to the Bankruptcy Code — into a core proceeding.

### C.  The Remaining *Orion* Factors Favor Withdrawal

Considered together, the remaining *Orion* factors, including the parties' right to a jury trial, as well as "considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law," *Orion*, 4 F.3d at 1101, favor withdrawal.

#### 1.  Judicial Efficiency

With respect to considerations of efficiency, because the Bankruptcy Court lacks constitutional authority to enter final judgment on these claims, it would be limited to submitting proposed findings of fact and conclusions of law for *de novo* review by the district court. *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 472

(S.D.N.Y. 2011) ("Because the Bankruptcy Court is not able to finally determine these proceedings without the consent of the [defendants] — which does not appear to be forthcoming — any recommendations it makes will need to be reviewed *de novo* in this Court.")  "[I]t is generally 'inefficient to allow the proceedings to go forward, knowing that they will have to be substantially repeated.'"  *Diocese of Rockville Centre*, 2021 WL 1978560, at *8 (quoting *Dynegy Danskammer,* 905 F. Supp. 2d at 533); *see also Orion*, 4 F.3d at 1101 ("[T]he fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court.").  Moreover, contrary to Celsius's assertions otherwise, this is not a case where the "bankruptcy court is more familiar with the record or already has extensive experience in the matter," such that it would be "most efficient for the bankruptcy court to propose recommendations first, even though the district court ultimately would have to review them de novo."  *Dynegy Danskammer*, 905 F. Supp. 2d at 533.  The case is still in an early procedural posture: the pending motions to dismiss remain undecided, the parties have not yet commenced discovery proceedings, and no case management plan or other course of proceedings has been agreed upon.

Nor are the claims asserted here — a securities fraud claim and common-law tort claims — claims that the Bankruptcy Court has "specialized familiarity of or experience with," such that "withdrawing the reference will avoid the duplication of effort in resolving the case and is therefore a more efficient use of judicial resources."  *Empire Stat Grp.*, 2024 WL 3666381, at *7 (citing *Scott v. AIG Prop. Cas. Co.*, No. 17-cv-01052 (GHW), 2017 WL 1380607, at *3 (S.D.N.Y. Apr. 17, 2017)).  Plaintiff contends that the Bankruptcy Court has specialized knowledge by virtue of its oversight over the underlying bankruptcy case over the last two and a half years, as well as its management of over two thousand related adversary

proceedings.  Opp. at 8.  Although Plaintiff refers to the settlement of "a related case, which is likely to be implicated in the discovery process here," Br. at 9, Plaintiff has not identified the action, how it is similar to the instant case, or any other adversary proceeding whose outcome or procedural processes would impact this Adversary Proceeding (or vice versa).  Plaintiff also has not pointed to, nor has the Court in its review located, any adversary proceedings that do not deal with claims brought under the Bankruptcy Code and/or claims ordinarily heard by bankruptcy courts, such as avoidance actions and actions for the turnover of property of the estate.  *See, e.g.*, *Sec. Inv. Prot. Corp.*, 2023 WL 6122905, at *7 ("As a general matter, the bankruptcy court is more familiar with avoidance claims, which are customarily adjudicated by bankruptcy courts because they are core proceedings." (alterations adopted) (citation omitted)).  The present proceeding is only tangentially related to the underlying bankruptcy proceeding, and only insofar as Defendants stand to recover a sum that could impact the liquidation and administration of the estate.  That, however, might be said of many a claim brought by a debtor during the pendency of the debtor's bankruptcy proceedings.  The Adversary Proceeding's distant connection to Celsius's bankruptcy proceeding is therefore by itself insufficient grounds to deny a withdrawal motion when the other relevant factors all tip in favor of removal to a federal district court.

Moreover, given that the Court has already determined that Celsius's securities fraud claim is subject to mandatory withdrawal, and "given the substantial factual overlap among the various claims . . . it would be inefficient to try this case in separate courts."  *In re FKF 3, LLC*, No. 13-cv-03601 (KMK), 2016 WL 4540842, at *20 (S.D.N.Y. Aug. 30, 2016).  All of Celsius's claims flow from the same alleged conduct: that is, Defendants' purported misrepresentation regarding the pricing data used to value assets on the Protocol.  *See* FAC ¶¶

62-102.  Withdrawal of Plaintiff's common-law tort claims will allow all of Plaintiff's claims to be decided in a single proceeding and is therefore in the interest of judicial efficiency.

### 2. Uniformity

"This factor encompasses both the uniform administration of bankruptcy law and intra-case uniformity." *Diocese of Rockville Centre*, 2021 WL 1978560, at *10 (citing *Dynegy Danskammer*, 905 F. Supp. 2d at 533-34).  "With respect to uniformity of bankruptcy law, this factor is neutral because the claims at issue are non-core claims that do not arise under bankruptcy law." *Id.*; *accord Empire Stat Grp.*, 2024 WL 3666381, at *7.

As for intra-case uniformity, "'courts in this district have' . . . found that 'uniformity is clearly served by leaving similar, related disputes in the hand of a single court.'" *Sec. Inv. Prot. Corp.*, 2023 WL 6122905, at *8 (alterations adopted) (quoting *In re Lehman Bros. Holdings Inc.*, 18 F. Supp. 3d 553, 558-59 (S.D.N.Y. 2014)).  But, as noted above, while Plaintiff asserts that the Bankruptcy Court has overseen two thousand related adversary proceedings, including overseeing three hundred proceedings to resolution, Plaintiff does not point to any proceedings that involved similar allegations or claims as to those charged herein. That makes this case markedly different from Plaintiff's cited authorities.  In those cases, retaining jurisdiction in the bankruptcy court advanced intra-case uniformity because the bankruptcy law claims at issue overlapped with claims asserted in related adversary proceedings.  *See, e.g.*, *Picard v. Greiff*, 617 B.R. 198, 207 (S.D.N.Y. 2020) (finding that withdrawal of bankruptcy reference would delay resolution of action where bankruptcy court had "significant expertise over this SIPA litigation," and had decided "numerous other adversary proceedings to avoid and recover transfers [the debtors] made to certain customers" (alterations adopted) (citations omitted)); *Intel Corp.*, 18 F. Supp. 3d at 558 (denying motion to withdraw reference related to swap agreement between Intel and Lehman "given the

Bankruptcy Court's experience with the Lehman bankruptcies and related adversary proceedings involving swap agreements and derivative-based claims"); *Lehman Bros. Holdings Inc.*, 480 B.R. at 196 (denying motion to withdraw given the bankruptcy court's "wealth of knowledge and experience with fraudulent transfer claims" and "with the administration of the entire Lehman bankruptcy" (citations omitted)); *Lehman Bros. Holdings, Inc. v. Hometrust Mortg. Co.*, No. 15-cv-00304 (PAE), 2015 WL 891663, at *4 (S.D.N.Y. Feb. 25, 2015) (denying motion to withdraw where Lehman "ha[d] expressed the intent to initiate more than 3,000 parallel adversary proceedings" which were likely to involve "common claims and defenses"). Here, in contrast, the pre-petition claims brought by Celsius have at best an attenuated relationship to the underlying bankruptcy proceeding, related adversary proceedings, or traditional bankruptcy matters. While Plaintiff contends that the Bankruptcy Court is "intimately familiar with the Debtors" and "their business," Opp. at 1, it is not clear how this expertise will assist with resolution of Celsius's claims, which center instead upon Compound Labs' business operations and Defendants' representations thereto.

### 3. The Parties' Jury Trial Rights

"If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." *Orion*, 4 F.3d at 1101. But this factor is not dispositive — a "district court also might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court." *Id.* at 1101-02.

Here, "[t]his case is in its early stages and is far from trial ready: dispositive motions have not yet been decided, and discovery is not complete." *Diocese of Rockville Centre*, 2021 WL 1978560, at *11. Therefore, although Defendant's invocation of jury rights cuts in favor

of withdrawing the reference, the Court does not attach much weight to this factor at this time because it is unclear whether the case will in fact proceed to a jury trial.

### 4. Forum Shopping

Notwithstanding Plaintiff's protestations otherwise, "[t]here is no indication that the [defendants] were engaged in forum shopping 'as opposed to a genuine desire for more efficient adjudication.'" *Empire Stat Grp.*, 2024 WL 3666381, at *8 (quoting *Dynegy Danskammer*, 905 F. Supp. 2d at 533); *accord Diocese of Rockville Centre*, 2021 WL 1978560, at *11. The case is in its early stages, the FAC that contained the federal securities claim was not filed until November 2024, no discovery has taken place, the Bankruptcy Court has not issued any substantive decisions, and this motion to withdraw was filed even before the pending motion to dismiss was fully briefed. Moreover, "due to the bankruptcy court's limited adjudicative authority, these claims may end up before a district court irrespective of the outcome of this motion." *Empire Stat Grp.*, 2024 WL 3666381, at *8. The consideration of forum shopping thus does not weigh against withdrawing the reference.

Therefore, on balance, the *Orion* factors weigh in favor of withdrawing the bankruptcy reference.[4]

## III. Withdrawal is Not Premature

Plaintiff argues that even if withdrawal is appropriate, it is still premature where, as here, the case is "nowhere near being trial ready." Opp. at 13. But courts often grant withdrawals of the reference even if a case is in an early posture, so long as the other *Orion* factors weigh in favor of doing so. *See, e.g.*, *Empire Stat Grp.*, 2024 WL 3666381, at *8

---

[4] Although the Court finds that removal of Celsius's federal securities claim is mandatory under Section 157(d), the *Orion* factors set forth above likewise support withdrawal of the securities fraud claim under Section 157(d)'s permissive withdrawal provision.

(observing that the case was "unlikely to be tried" and was "more likely to settle or to be resolved on dispositive motions," but nevertheless granting withdrawal of bankruptcy reference given the other *Orion* factors (citation omitted)); *Diocese of Rockville Centre*, 2021 WL 1978560, at *11 (holding that the *Orion* factors as modified by *Stern* support withdrawal of the bankruptcy reference, despite the fact that the "case is in its early stages and is far from trial ready").[5]  Invocation of jury trial rights is just one of several factors courts consider when deciding a motion to withdraw a bankruptcy reference; the early posture of a case is therefore not by itself sufficient to outweigh other considerations, including those of judicial efficiency.

---

[5] Plaintiff's cited authorities do not compel this Court to reach a contrary holding.  *Gucci ex rel. Armstrong v. Gucci* acknowledged that "while there is no question that this case must return to the District Court if and when there is a jury trial, at the present infant stage of the proceeding the issue of withdrawal is discretionary and *turns largely on considerations of judicial economy*."  No. 96-cv-08216 (JSR), 1997 WL 122838, at *1 (S.D.N.Y. Mar. 17, 1997) (emphasis added).  *Gucci's* language is therefore consistent with this Court's opinion: the Court herein grants permissive withdrawal because it deems doing so consistent with considerations of judicial economy.  *See also Lehman Bros. Holdings, Inc.*, 480 B.R. at 194 (observing that defendant's request for a jury trial request was not sufficient by itself to mandate withdrawal, but "examin[ing] whether the other considerations identified by the Second Circuit in *Orion* warrant withdrawing the reference at this stage").  Plaintiff's other cited authorities denied motions to withdraw because — unlike here — sufficient proceedings had already taken place in the bankruptcy court, and therefore, efficiency considerations weighed against removal to federal district court.  *See, e.g.*, *In re Adler*, *Coleman Clearing Corp.*, 270 B.R. 562, 565 (S.D.N.Y. 2001) (denying motion to withdraw where "fact discovery ha[d] been completed" and "expert discovery [was] pending"); *In re Madison Bentley Assocs.*, 474 B.R. at 439-440 (denying motion to withdraw reference when the parties had already litigated the adversary proceeding for over a year and a half and discovery was complete); *Sec. Inv. Prot. Corp.*, 2023 WL 6122905, at *7 (denying motion to withdraw reference where the adversary proceeding had been before the bankruptcy court for over ten years); *Pryor*, 2014 WL 1355623, at *7 (denying motion to withdraw where the bankruptcy court "ha[d] administered the adversary proceeding for approximately two years, overseen discovery, held hearings, [and] ha[d] the motions for summary judgment before it"); *Kirschner v. Agoglia*, 476 B.R. 75, 83 (S.D.N.Y. 2012) (declining to withdraw reference where the bankruptcy court "ha[d] already spent three years working on th[e] adversary proceeding and [was] intimately familiar with its details").  Those cited actions were in very different advanced procedural postures than the case at hand.

Here, the other *Orion* factors weigh in favor of consideration by a federal district court in the first instance.

Finally, Plaintiffs argue that even if the Court grants the motion to withdraw the reference now, it should remand to the Bankruptcy Court for pretrial proceedings, including a proposed ruling on Defendants' Motion to Dismiss and any subsequent dispositive motions. Opp. at 14.  Courts that have taken that approach, however, have done so because they have found that the bankruptcy judge's familiarity with the bankruptcy proceedings "create[d] a judicial ambiance in which remand would be productive."  *In re Ionosphere Clubs, Inc.*, 142 B.R. at 649; *see also id.* (remanding for proposed findings of fact and conclusions of law on preferential transfer claim); *In re Pan Am Corp.*, 133 B.R. 700, 703 (S.D.N.Y. 1991) (remanding for submission of proposed findings of fact and conclusions of law with respect to allowance or disallowance of creditor's claims given that "approval of the plan of reorganization [was] contingent on resolution of [creditor's] claims and the Debtors' objections thereto," and in light of the bankruptcy judge's "familiarity with the parties to the action and the impact of [creditor's] claims on the Debtors' estates").  Although Judge Glenn undoubtably has extensive knowledge of Celsius's bankruptcy proceedings, for the reasons set forth above, it is not clear to the Court that familiarity with the Chapter 11 proceedings will necessarily facilitate resolution of the common-law and federal securities claims asserted here, such that remand would lead to the "most efficient and timely resolution" of this action.  *In re Pan Am Corp.*, 133 B.R. at 703.  Therefore, the Court declines to remand the matter to Bankruptcy Court for pretrial proceedings.

## CONCLUSION

For the reasons stated above, Defendants' motion to withdraw the bankruptcy

reference at Dkt. 1 is GRANTED.

Dated: April 8, 2025
        New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge